DECISION AND JUDGMENT
{¶ 1} This case is before the court on appeal from the judgment of the Lucas County Court of Common Pleas which, on August 10, and October 15, 2007, determined the parties' cross-motions for summary judgment. Appellants, Jeffery S. Walles and Farm Bureau General Insurance Company of Michigan ("Farm Bureau"), timely appealed the decision of the trial court. Flower Hospital, ProMedica Health System, Inc., [1] and Lexington Insurance Company ("Lexington") are the appellees in this action.
 {¶ 2} Walles, an employee of Flower Hospital, was involved in an automobile accident with plaintiff, Emily Williamson, on October 14, 2003, while driving his personal vehicle to pick up materials for his job during work hours. Williamson sued Walles for negligence, and Flower Hospital under the doctrine of respondeat superior, for her damages, in case number CI05-3395, filed on June 2, 2005. At the time of the collision, Walles' vehicle was insured by Farm Bureau, which provided coverage of $300,000 per person/$300,000 per occurrence. Flower Hospital claimed to be self-insured. Walles filed a cross-claim against Flower Hospital, seeking that Flower Hospital provide him with a defense and indemnification. In turn, Flower Hospital filed a cross-claim against Walles, asserting that it was entitled to indemnification from Walles for any amount Flower Hospital was required to pay as a result of Walles' collision with Williamson. *Page 3 
 {¶ 3} During the pendency of the personal injury action, CI05-3395, Flower Hospital filed, on June 28, 2006, a declaratory judgment action against Farm Bureau and Walles, in case number CI06-4288. Flower Hospital asserted in its complaint that Farm Bureau was responsible for providing primary liability coverage, that Flower Hospital's self-insurance did not constitute "other insurance" for purposes of Farm Bureau's "other insurance" provision, that Walles was not a named insured under Lexington's policy, and that Flower Hospital's coverage would be triggered, if at all, only upon a showing that Walles was acting with the scope of his employment and that damages awarded to Williamson exceeded the limits of Farm Bureau's coverage. Lexington, Flower Hospital's excess insurer, was added as a third-party defendant. From the onset, both CI05-3395 and CI06-4288 were placed on the docket of Judge Frederick H. McDonald and were treated as consolidated cases.
 {¶ 4} Farm Bureau, Flower Hospital, Lexington, and Walles filed cross motions for summary judgment in CI06-4288 regarding coverage issues. On August 10, and October 15, 2007, the trial court held that (1) Farm Bureau's coverage is primary up to 300,000; (2) Flower Hospital owes a duty to pay any loss in excess of $300,000, up to $550,000;[2] and (3) if Walles is insured by Lexington, Lexington's coverage is secondary *Page 4 
to that provided by Farm Bureau and Flower Hospital. Regarding Walles' claim that Flower Hospital has a duty to defend and indemnify him from any recovery by the Williamsons, the trial court held that Walles' theories, including breach of express and implied contract, promissory and equitable estoppel, and unjust enrichment, were not sufficient to impose upon Flower Hospital a duty to defend or indemnify Walles. The trial court, however, noted that these theories "may constitute affirmative defenses to any claim for indemnification that Flower Hospital may make against Mr. Walles following the trial of the Williamsons' claims in case number CI05-3395."
 {¶ 5} The trial court also held that there were genuine issues of material fact as to whether Walles' car was a loaned vehicle and thus covered by the Lexington policy. However, finding that it was unlikely that any verdict against Walles and Flower Hospital would exceed $550,000, the trial court found that the issue of whether Walles was an insured under Lexington's policy "may well become moot." As such, the trial court held that trial on the issue of whether Walles was a Lexington insured would be "continued until after the trial on the Williamsons' claims against Mr. Walles and Flower Hospital in case number CI05-3395." If the verdict against Walles exceeded $550,000, then a trial of the factual issue of Lexington's coverage of Walles' vehicle would be held. Similarly, the trial court held that if Flower Hospital seeks indemnification from Walles following the trial of the Williamsons' claims, then Walles' bifurcated claims for compensatory damages against Flower Hospital and Lexington will also be tried. *Page 5 
 {¶ 6} The trial court did not add Civ. R. 54(B) language and, therefore, its August 10, and October 15, 2007 decisions were not final and appealable. On December 10, 2007, in CI05-3395, in light of a settlement between Williamson and Walles, Williamson dismissed her claims against Walles with prejudice, and dismissed her claims against Flower Hospital without prejudice.[3] The trial court's judgment entry additionally noted that "it now appears the only remaining issues for resolution relate to the coverage questions at issue in the consolidated declaratory judgment action relating to this matter." The court ordered the addition of Civ. R. 54(B) language to allow an appeal of the coverage issues which had been determined by the trial court on August 10, and October 15, 2007.
 {¶ 7} On appeal, Walles raises the following assignments of error:
 {¶ 8} "1. The trial [court] erred to the prejudice of the appellant, Jeffery S. Walles, when it granted summary judgment to the appellees Flower Hospital and Lexington Insurance Company and held that Flower Hospital was self-insured and that Lexington did not owe a duty to provide coverage or a defense until the Farm Bureau Policy was exhausted.
 {¶ 9} "2. The trial [court] erred to the prejudice of the appellant, Jeffery S. Walles, when it granted summary judgment to the appellees, Flower Hospital and *Page 6 
ProMedica Health Systems, and held that neither entity owes a duty to defend and indemnify Jeffery S. Walles.
 {¶ 10} "3. The trial court erred to the prejudice of appellant, Jeffery S. Walles, when it granted summary judgment to Flower Hospital and ProMedica Health Systems as there are genuine issues of material fact regarding waiver and equitable estoppel."
 {¶ 11} On appeal, Farm Bureau raises the following assignments of error:
 {¶ 12} 1. "The Lucas County Common Pleas Court erred in failing to make any determination on the issue as to whether Flower Hospital, on October 14, 2003, held a valid certificate of self insurance or other proof of financial responsibility and otherwise was in compliance with the financial responsibility laws of Ohio."
 {¶ 13} 2. "The Lucas County Common Pleas Court erred when it found a genuine issue of material fact as to whether Walles['] usage of his own vehicle was covered under the purportedly excess policy, and in not resolving that issue unless a verdict in excess of $550,000 was returned by a jury. As a matter of law, Walles was an insured under the policy."
 {¶ 14} 3. "The Lucas County Common Pleas Court erred in determining that the Lexington policy did not drop down to share pro rata with Farm Bureau on a primary basis and should have determined that after Flower pays its $250,000 retained limit after the apportionment of ultimate net loss, Farm Bureau and Lexington share on a pro rata basis between $250,000 and $550,000, and Lexington pays any loss between $550,000 and $1,000,000." *Page 7 
 {¶ 15} This court notes at the outset that in reviewing a motion for summary judgment, we must apply the same standard as the trial court.Lorain Natl. Bank v. Saratoga Apts. (1989), 61 Ohio App.3d 127, 129. Summary judgment will be granted when there remains no genuine issue of material fact and, when construing the evidence most strongly in favor of the non-moving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law. Civ. R. 56(C).
 {¶ 16} Because appellants' assignments of error are interrelated, we will consolidate their arguments in our analysis on appeal. Initially, we note that whether Flower Hospital was self-insured has no effect on the coverage received by Walles or the outcome of this appeal and, therefore, will not determine that issue on appeal.
 Priority of Liability {¶ 17} In this case, Walles carried coverage on the vehicle he owned, as he was required to do pursuant R.C. Chapter 4509, and he was provided a defense and coverage for the collision with Williamson by his carrier, Farm Bureau. Farm Bureau's policy provided coverage up to $300,000. Nevertheless, appellants argue that Flower Hospital should have been required to provide coverage to Walles, either primary or on a prorated share with Farm Bureau, because Walles was an employee acting within the course and scope of his employment at the time of the collision. Additionally, appellants argue that it is against public policy for Flower Hospital to be self-insured because it allows Flower Hospital to "foist" liability on to its employees and allows the employer to avoid liability owed to third-parties. *Page 8 
 {¶ 18} We, however, find that the trial court correctly concluded that Flower Hospital owed no duty to defend or indemnify Walles. It is well-settled that, although an employer or principal is vicariously liable for the torts of its employees or agents under the doctrine of respondeat superior, the employee who committed the tort is primarily liable for his actions, while the employer is merely secondarily liable.Comer v. Risko, 106 Ohio St.3d 185, 2005-Ohio-4559, ¶ 20. Moreover, "[i]n situations involving vicarious liability, there arises the right of indemnity in the party that is secondarily liable." Id. at ¶ 24. Because the principal or employer is only secondarily liable, any coverage it supplies is, in effect, excess to that supplied by the primarily liable negligent party. See Id. at ¶ 26. Accordingly, Walles, not Flower Hospital, is primarily liable for the injuries suffered by Williamson.
 {¶ 19} Further, we find that, regardless of whether Flower Hospital was self-insured, it had no legal obligation to provide automobile liability coverage on Walles' vehicle, which he owned and drove. Flower Hospital did not "foist" liability on to Walles and is not avoiding its duty to Williamson; rather, Flower Hospital's liability is merely secondary. In the event that Williamson's damages exceeded Walles' limits of coverage with Farm Bureau, Flower Hospital would have been liable to Williamson, but only in excess to the coverage afforded by Farm Bureau. Accordingly, we find that it is not against public policy for an employer to be self-insured and, thereby, maintain its right to be held only secondarily liable for its employees' actions and retain its right of indemnity against its employees. *Page 9 
 Waiver and Equitable Estoppel {¶ 20} Alternatively, appellants argue that Flower Hospital became primarily responsible for Walles' actions pursuant to the doctrines of waiver and equitable estoppel. Specifically, Walles testified in his deposition that, after the collision, Flower Hospital's personnel told him "not to worry" and, when he was sued by Williamson, that he did not need to hire an attorney. In addition, Walles asserted that Flower Hospital paid for the property damage to Walles' vehicle, and had notified its employees that it "maintains liability insurance * * * [and that] * * * [t]hese policies provide professional and general insurance coverage * * * for employees * * * while such persons are acting within the scope of their duties, subject to the terms and exclusions from coverage set forth in the policies."
 {¶ 21} A prima facie case for equitable estoppel requires a plaintiff to prove four elements: (1) that the defendant made a factual misrepresentation, (2) that it is misleading, (3) that it induces actual reliance that is reasonable and in good faith, and (4) that it causes detriment to the relying party. Doe v. Blue Cross/Blue Shield ofOhio (1992), 79 Ohio App.3d 369, 379. "`Waiver' is defined as a voluntary relinquishment of a known right." State ex rel. Wallace v.State Med. Bd. of Ohio, 89 Ohio St.3d 431, 435, 2000-Ohio-213. Waiver assumes one has an opportunity to choose between relinquishing or enforcing a right. Chubb v. Ohio Bur. of Workers' Comp. (1998),81 Ohio St.3d 275, 279. A party who has a duty to perform and who changes its position as a result of the *Page 10 
waiver may enforce the waiver. Id. at 279, citing Andrews v. StateTeachers Retirement Sys. (1980), 62 Ohio St.2d 202, 205. A party asserting a waiver "must prove a clear, unequivocal, decisive act of the party against whom the waiver is alleged, showing such a purpose or acts amounting to an estoppel on his part." White Co. v. CantonTransportation Co. (1936), 131 Ohio St. 190, paragraph four of the syllabus.
 {¶ 22} Our review of the record reveals the following. After the collision, Walles testified that he was very concerned that Williamson had been seriously injured and Flower Hospital personnel assured him "not to worry." There is no indication that this statement was made to assure Walles that he would not be held liable for the damages to Williamson. Regarding the need for an attorney, it is clear that Walles was provided an attorney by his insurance company and that Flower Hospital was aware of this. Thus, as informed, Walles did not need to independently hire counsel to represent him.
 {¶ 23} As to the property damage to Walles' vehicle, we find that any obligation or liability that Flower Hospital had to Walles for damages, that occurred to his vehicle while he was using it at work, is unrelated to any liability Flower Hospital would have with respect to Williamson's injuries and damages. Undertaking responsibility for damages incurred by its employee does not necessarily equate to undertaking responsibility for the damages to the injured third-party.
 {¶ 24} We further find that the notice from Flower Hospital regarding liability insurance specifically referenced coverage for the "services" provided by employees. *Page 11 
There is no indication that Flower Hospital assumed the responsibility for providing automobile liability coverage on vehicles owned by its employees.
 {¶ 25} Accordingly, we find that appellants failed to establish that Flower Hospital assumed the responsibility of being primarily liable for the collision caused by Walles. Although we find that no misrepresentations were made by Flower Hospital, assuming arguendo that Walles believed Flower Hospital had assumed primary liability, we nevertheless find that Walles suffered no detriment. He was provided a full defense by counsel supplied by Farm Bureau and was provided insurance coverage for the damages to Williamson. Moreover, the record clearly demonstrates that Farm Bureau was not misled by Flower Hospital because Farm Bureau knew to and did provide a defense and coverage for Walles. Having found that appellants failed to prove waiver or equitable estoppel, we find that Flower Hospital is not estopped from claiming that it is only secondarily liable for the damages caused by its employee.
 Farm Bureau's Other Insurance Provision {¶ 26} We further find that, whether or not Flower Hospital was self-insured, Flower Hospital is not required to provide a prorated share of coverage with Farm Bureau. Farm Bureau's policy provided coverage up to $300,000; however, as stated in its policy, it only provides coverage on a pro rata basis with any other applicable liability insurance:
 {¶ 27} "H. Other Insurance *Page 12 
 {¶ 28} "If there is other applicable liability insurance, we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits."
 {¶ 29} Self-insurance "is the retention of the risk of loss by the one upon whom it is directly imposed by law or contract." Physicians Ins.Co. of Ohio v. Grandview Hosp. and Med. Ctr. (1988), 44 Ohio App.3d 157,158. Self-insurance, however, is not "insurance" for purposes of an "other insurance" clause. Id. Thus, even if Flower Hospital were self-insured, we find that it would not qualify as "other applicable liability insurance" and, therefore, that it was not obligated to pay a prorated share of coverage with Farm Bureau.
 {¶ 30} Conversely, if Flower Hospital was not self-insured, we find that there was no policy in effect for the first $250,000 of damages. Flower Hospital had coverage with Lexington, but Lexington had no obligation to defend or indemnify any insured unless and until the combined costs of defense and indemnity exceeded the $250,000 retained limit set forth in the declarations page of Lexington's policy. As such, if Flower Hospital was not self-insured, we find that it would have been uninsured for the initial $250,000, and would only have insurance coverage for any "ultimate net loss" exceeding $250,000. Thus, whether self-insured or uninsured up to $250,000 in damages, Flower Hospital was not required to provide a prorated share of coverage with Farm Bureau pursuant to Farm Bureau's "Other Insurance" provision. *Page 13 
 Lexington's Duty to Provide Coverage {¶ 31} If Flower Hospital was uninsured, appellants argue that Lexington's policy should "drop-down" and provide a prorated share of coverage with Farm Bureau for the initial $250,000 of coverage. Additionally, appellants argue that the trial court erred in finding that a genuine issue of material fact existed with respect to whether Walles was an insured under Lexington's policy. We disagree. Regardless of whether Walles was an insured under Lexington's policy, Lexington only affords coverage that is excess to other available insurance, such as Farm Bureau.
 {¶ 32} Lexington's policy clearly states that it does not provide coverage unless the "ultimate net Loss" exceeds the $250,000 retained limit. Lexington's policy further states that "[i]f collectible insurance with any insurer is available to the Insured covering a loss also covered hereunder, the insurance hereunder shall be in excess of, and not contribute with, such other insurance provided * * *." Because Farm Bureau provided collectible insurance up to $300,000, at best, Lexington's policy only provided excess coverage over that amount. Additionally, we note that when there is competing coverage, the owner's policy is primary as "insurance follows the car." Ohio Govt. Risk Mgt.Plan v. Cty. Risk Sharing Auth, Inc. (1998), 130 Ohio App.3d 174, 183.
 {¶ 33} Furthermore, even if Walles was insured by Lexington, Lexington only provided coverage in excess of the coverage afforded by Farm Bureau. Walles, represented by Farm Bureau, has already settled with Williamson, and Williamson *Page 14 
dismissed her causes of action against Walles and Flower Hospital. As no cause of action remains between Williamson and Walles, and because Flower Hospital is only vicariously liable to Williamson, any claim Williamson had against Flower Hospital is now extinguished. SeeWells v. Spirit Fabricating, Ltd. (1996), 113 Ohio App.3d 282, 293. Although the amount of the settlement between Williamson and Walles was not disclosed, there has been no indication that the settlement exceeded Farm Bureau's policy limits. Unless the settlement exceeded Farm Bureau's limits, we find that any determination regarding Lexington's duty to provide coverage would be illusory and, therefore, will not be addressed.
 Indemnification {¶ 34} With respect to Flower Hospital's right to indemnification, we find that there is no evidence that Flower Hospital paid any amount to Williamson for which it could seek indemnification from Walles. Moreover, Williamson's claims against Flower Hospital have been extinguished. Thus, although generally a party who is only secondarily liable is entitled to indemnification from a party who is primarily liable, we find that any specific determination of Flower Hospital's right to indemnification in this case would be illusory and, therefore, will not be addressed.
 {¶ 35} We further find that Walles' reliance on Indiana Ins. Co. v.Barnes, 165 Ohio App.3d 262, 2005-Ohio-6474, is misplaced. Walles is correct that in Barnes the court found that the employer had no right of indemnification against the employee, or his *Page 15 
insurance company, for damages paid by the employer arising out of employee's actions during the scope and course of employment. Unlike this case, however, the employer in Barnes had insurance and the employee was covered under that insurance. The principle of subrogation did not permit the insurer to stand in the shoes of one insured, i.e., the employer, to recover losses occasioned by another insured, i.e., the employee, under the same policy. Barnes at ¶ 25. In this case, Flower Hospital was either self-insured or uninsured. In either event, Walles was not insured by Flower Hospital. As such, Flower Hospital did not contractually extinguish its right to seek indemnification from its employee.
 Conclusion {¶ 36} Accordingly, we find that the trial court did not err in granting summary judgment to Flower Hospital and Lexington. Upon review of the insurance policies and applicable law, we find that Farm Bureau's policy provided primary coverage for the collision on October 14, 2003, and that neither Flower Hospital, nor Lexington, was required to contribute a prorated share of coverage for the first $300,000 of liability coverage. Whether self-insured or uninsured, Flower Hospital was only secondarily liable for Walles' actions. Additionally, regardless of whether Walles was an insured, by the terms of its policy, Lexington's coverage was merely excess to Farm Bureau's policy limits. All of appellants' assignments of error are therefore found not well-taken.
 {¶ 37} On consideration whereof, the court finds substantial justice has been done the party complaining and the judgment of the Lucas County Court of Common Pleas is *Page 16 
affirmed. Appellants are ordered to pay the costs of this appeal pursuant to App. R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Lucas County.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App. R. 27. See, also, 6th Dist. Loc. App. R. 4.
Peter M. Handwork, J. Arlene Singer, J., Thomas J. Osowik, J., CONCUR.
[1] ProMedica's sole involvement in this litigation is as the parent corporation of Flower Hospital. Flower Hospital and ProMedica will collectively be referred to as "Flower Hospital."
[2] This finding was clarified by the trial court in its October 15, 2007 decision, as follows: The trial court held that appellees owe a duty to defend Walles and pay Williamson "for any loss in excess of [$300,000] up to the amount of $550,000."
[3] The amount of the settlement was not disclosed in the court's record. There is also no indication which party paid the settlement. *Page 1